### SLATER v SLATER

Ohio Appeals, 2nd Dist, Franklin Co

No 2285. Decided July 31, 1933

Graham & Gingher, Columbus, for plaintiff in error.

Ballard & Hensel, Columbus, for defendant in error.

## OPINION

By THE COURT

Error is prosecuted from a judgment of the Court of Common Pleas, Division of Domestic Relations. The plaintiff in error was formerly the wife of defendant in error. On June 27, 1931, the court granted plaintiff in error a decree of divorce from defendant in error on the ground of gross neglect of duty and at the same time approved, confirmed and made a part of the order of the court a written agreement entered into by the parties prior to the divorce decree. By the terms of the agreement between the parties the plaintiff in error was granted the custody, care and control of their minor daughter, Vivian Slater, with certain rights of visitation accorded to

the father. Thereafter, defendant in error filed a motion in the trial court to modify the order to change the custody of the child from plaintiff in error to the defendant in error. This motion came on for hearing and testimony was taken for and against the motion. Vivian Slater testified and in open court expressed a preference to be placed in the custody of her father, defendant in error. At the time that Vivian indicated her preference she was almost twelve years of age. The trial court, upon consideration, sustained the motion for modification of the custodial award and granted the exclusive custody of the minor to the father, defendant in error, subject to rights of visitation to the mother. From this judgment of the trial court error is prosecuted.

The correctness of the judgment of the trial court must be measured by the application of §§8032 and 8033 GC., particularly a part of §8033 GC, which reads as follows:

"Upon hearing the testimony of either or both of such parents, corroborated by other proof, the court shall decide which one of them shall have the care, custody and control of such offspring, taking into account that which would be for the best interests, except that, if such children be ten years of age or more, they must be allowed to choose which parent they prefer to live with, unless the parent so selected by reason of moral depravity, habitual drunkenness or incapacity, be unfitted to take charge of such children, in which event the court shall determine their custodian. The above provisions permitting children to choose their parent with whom they desire to live, also shall apply to proceedings for modification of the former orders of the court, fixing the custody thereof, as in original actions. If upon such hearing it should be proved that both parents are improper persons to have the care, custody and control of their children, in its discretion, the court may either designate some reputable and discreet person to take charge thereof, or commit them to a county or district children's home in which they or their parents have a legal settlement."

The choice of the child in this case appears to have been made of her own volition and the trial court must have been satisfied that such was the case. We find nothing in the record which would require us to say that the child was improperly or unduly influenced to express her preference to live with her father. At the time the

choice was indicated she was, and had been for almost two years, living with her mother under her control and growing up within the atmosphere of her influence. Thus, the normal reaction of the child would be to express a preference to remain with her mother. It also appears that there is nothing in the way of mistreatment or lack of care on the part of her mother which actuates the selection of the child; nor is there any outstanding, unusual or moving reason appearing in the record impelling the daughter to make choice of her father. It is possible that the child was unduly influenced, but is not proven. It, therefore, fairly appears that the child, upon consideration of both parents, is definitely of opinion that she would prefer to live with her father. It is this preference that §8033 GC clearly purposes to respect and effectuate.

In the application of the section under the facts in this case the duty of the court is plain and it is required to respect the choice of the child as to which parent it prefers to live with, unless the parent so selected is unfit to take charge of the child by reason of moral depravity, habitual drunkenness or incapacity. The record does not tend to sustain habitual drunkenness or the incapacity of defendant in error and there is thus left for consideration the further disqualifying element, namely, moral depravity. Unless this father is morally depraved we must support the judgment of the trial court in awarding to him the custody of his daughter.

It is unnecessary to consider the record in detail. It is unusual in many of its aspects. Much of the testimony offered by the defendant in error was unnecessary and he would have been placed in a better position with this court and no doubt with the trial court had it not been offered. It was not incumbent upon the defendant in error to show that the plaintiff in error was an unfit person to have the custody of her daughter. On the contrary, the burden was on the plaintiff in error to establish the unfitness of defendant in error. The fact is that the most damaging testimony against the father and that which arrests the attention of this court as to his moral qualifications is found in the testimony which he himself produces against plaintiff in error. If we were certain that he had taken the pictures found in the record which he brought into court and offered in evidence against the mother of his child that alone would require us to say that he was morally unfit to have the custody of

his daughter. On the other hand, if these pictures were permitted by the plaintiff in error to have been taken by some one other than defendant in error that in itself would cause us to stamp her as unfit to have the custody of her own daughter. We are uncertain, upon the record, as to the source of the pictures. Likewise, the conduct of the husband respecting the employment of detectives and causing Mr. Hodges to establish contact with his (Slater's) former wife and to plan to place her in a compromising position and to take photographs of the act when completed, if true, is not helpful at all to the cause of defendant in error. The husband denies that he had any ulterior purpose in employing the detectives and that he intended to make known the results of the investigation and much of that which is testified by Mr. Hodges.

These disputed questions of fact and the credibility of the witnesses were before the trial court. We hear this case on error. Giving to the testimony of the defendant in error its most favorable intendment, as it is necessary to do to support the judgment, we cannot say the trial court erred in refusing to determine that defendant in error was morally depraved and unfit to have the custody of his minor daughter.

It was suggested at the oral hearing in this court that it might be advisable to place the child with a third party. In the trial court no such person ready and willing to take the child is disclosed.

If the daughter has made an unwise choice, of custodian, as the trial court observed, it will soon develop.

Although we are in doubt as to the propriety of taking the daughter from her mother and if the change is for her best interest, yet this is not the test under the statute, and measuring the judgment of the trial court in the light of his authority and mandate under the law, we are required to support the judgment. It will therefore be affirmed.

HORNBECK, PJ, KUNKLE and Barnes, JJ, concur.